UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
PROPHET MORTGAGE OPPORTUNITIES, LP,          :
:
Plaintiff,    :
:             22 Civ. 9771 (JPC)
-v-                   :
:             <u>OPINION AND ORDER</u>
:
CHRISTIANA TRUST, a Division of Wilmington   :
Savings Fund Society, FSB, as Both Owner Trustee and  :
Indenture Trustee of RBSHD 2013-1 Trust *et al.*,  :
:
Defendants.    :
:
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In this action involving numerous claims related to the mismanagement of, and misappropriation of funds from, a residential mortgage-backed securities trust, the RBSHD 2013-1 Trust, Richard A. Marshack (the "Proposed Intervenor"), a Chapter 7 bankruptcy trustee, seeks to intervene as of right or via permissive intervention to protect a bankruptcy estate's alleged interest in that trust. Because the Court determines that the Proposed Intervenor has failed to show that he has an interest in this litigation, it denies the motion with respect to intervention as of right. Because the Court further determines that allowing the Proposed Intervenor to intervene would result in undue delay, the Court also denies the motion with respect to permissive intervention. The Proposed Intervenor's motion therefore is denied in its entirety.

# I. Background

## A. Facts[1]

### 1. Background Allegations

This action concerns the conduct of Defendant Christiana Trust in its capacity as trustee of the Nominal Defendant, the RBSHD 2013-1 Trust, a residential mortgage-backed securities trust. Complaint ¶ 1. In short, Plaintiff Prophet Mortgage Opportunities, LP ("Prophet") alleges that Christiana Trust knowingly assisted in a fraudulent scheme by Matthew Browndorf to misappropriate trust assets for his own use. *Id.* ¶¶ 1-3.

Browndorf controlled, and held himself out as the managing partner and chief investment officer of, an entity called DCM-P1, LLC ("DCM-P1"). *Id.* ¶ 20. DCM-P1 was the "Majority Certificateholder" under the trust agreement which governed, among other things, a set of certificates issued by the RBSHD 2013-1 Trust, and was able to direct Christiana Trust in the management of the RBSHD 2013-1 Trust unless that direction was contrary to the terms of the trust agreement, other documents related to the trust, or other law. *Id.* ¶¶ 15, 18-20. DCM-P1's managing member, Distressed Capital Management, LLC ("DCM"), also was owned and controlled by Browndorf. *Id.* ¶ 39. Browndorf additionally owned and controlled, among other entities, Plutos Sama, LLC ("Plutos Sama"), which owned the BP Fisher Law Group, LLP ("BP Fisher"), a law firm that represented lenders and mortgage loan servicers in foreclosure and default actions. *Id.* ¶¶ 31-32. Proceeds from those actions were to be deposited in client trust accounts,

---

[1] The Court first cites facts alleged in the Complaint, Dkt. 1 ("Complaint"), which are largely reiterated in the proposed complaint in intervention, *see generally* Dkt. 30-2, to provide background relevant to this motion. The Court then cites to the Proposed Intervenor's allegations for additional factual content, which the Court accepts as true for the purposes of this motion. *See Floyd v. City of New York*, 302 F.R.D. 69, 83 (S.D.N.Y.), *aff'd*, 770 F.3d 1051 (2d Cir. 2014) (per curiam).

2

including an account for its client Specialized Loan Servicing LLC ("SLS"), an entity which acted as a servicer for the loans and properties that made up the RBSHD 2013-1 Trust's trust estate. *Id.* ¶¶ 27, 32-34. In 2017 and 2018, BP Fisher collected approximately $1.7 million in funds from foreclosures relating to six of the RBSHD 2013-1 Trust's mortgage loans, which were serviced by SLS, but never provided those funds to SLS, and therefore to the RBSHD 2013-1 Trust. *Id.* ¶ 34. Browndorf is alleged to have misappropriated those funds collected by BP Fisher for his own use. *Id.* ¶ 35. BP Fisher eventually declared bankruptcy in the Central District of California in 2019. *Id.* ¶ 36.

Essentially, Prophet alleges that Christiana Trust aided Browndorf in replacing SLS with DCM as servicer in an attempt to lessen Browndorf's personal liability in the BP Fisher bankruptcy by causing DCM to withdraw SLS's previously filed proof of claim for the RBSHD 2013-1 Trust's assets held by BP Fisher and misappropriated by Browndorf. *Id.* ¶¶ 50-55; *see also id.* ¶¶ 37 ("SLS in its capacity as Servicer for the Trust, filed a proof of claim against the debtor's estate, in the amount of approximately $1.7 million, representing the value of the six Mortgage Loans that BP Fisher foreclosed, but for which Browndorf never remitted the proceeds."), 39 (alleging that in May 2020, "Browndorf caused DCM-P1 to direct Christiana Trust to terminate SLS . . . without cause and install DCM-P1's own managing member, [DCM], as sole Servicer for the Trust"), 49 ("Christiana Trust declined to act on SLS's warning that DCM intended to withdraw . . . SLS's proof of claim concerning $1,731,207.67 Mortgage Assets in the BP Fisher Bankruptcy, which would deprive the Trust of funds that were collected and owed to it."). Additionally, Christiana Trust failed to require DCM to actually perform its new role as servicer, which DCM allegedly failed to do entirely. *Id.* ¶¶ 56-59. Christiana Trust then also "sold" numerous loans to another Browndorf affiliate at the direction of DCM-P1 and received no cash for the sales, instead

3

accepting a promissory note in violation of its duties. *Id.* ¶¶ 60-65. The Browndorf affiliate that purchased the loans then defaulted on the promissory note, on which Christiana Trust took no efforts to recover. *Id.* ¶¶ 66-68. Christiana Trust is also alleged to have undertaken other improper actions not immediately relevant to the Proposed Intervenor's motion.

### 2. The Proposed Intervenor's Allegations

The Proposed Intervenor is the Chapter 7 Trustee for the bankruptcy of Plutos Sama, now known as LF Runoff 2, LLC (the "Debtor"). Dkt. 30-1 ¶ 1. He claims that in 2015, the Debtor in conjunction with its wholly owned entities DCM and DCM-P1 purchased the equity rights to the RBSHD 2013-1 Trust for $8,200,000, and that DCM or DCM-P1 further acquired noteholder interests with a face value of approximately $22,000,000 in various note tranches of the RBSHD 2013-1 Trust. *Id.* ¶ 4. The Proposed Intervenor states that the "Debtor's bankruptcy estate's wholly owned entity[] holds the rights to junior priority Noteholder interests with an undisputed face value of approximately $22,000,000." *Id.* ¶ 12. However, the Proposed Intervenor also acknowledges that Browndorf "transferred in the Fall of 2018 to his Newco entity the Debtor's interest in DCM/DCM-P1," Dkt. 37 ("Reply") at 2, and that "Browndorf transferred the $22,000,000 Noteholder interest previously controlled by the Debtor to another entity controlled by Matthew Browndorf," *id.* at 4. In addition, the Proposed Intervenor elsewhere refers to DCM and DCM-P1 as the Debtor's "*previously* wholly owned entities." *Id.* at 8 (emphasis added).

### B. Procedural History

Prophet filed this action on November 16, 2022, bringing claims on behalf of itself as well as derivatively on behalf of other noteholders and on behalf of the Indenture Trustee of the RBSHD 2013-1 Trust. Dkt. 1. On January 19, 2023, the Court granted Christiana Trust leave to file a motion to dismiss by March 6, 2023. Dkt. 16. The Proposed Intervenor then filed a letter on February 8, 2023 seeking a pre-motion conference regarding his anticipated motion to intervene.

4

Dkt. 22.  The Court held that conference on February 17, 2023, set a briefing schedule for the motion to intervene, and adjourned the briefing schedule for the motion to dismiss *sine die* pending resolution of the motion to intervene.  Feb. 17, 2023 Minute Entry.  The Proposed Intervenor then filed his motion on March 10, 2023, seeking to file an intervenor's complaint that is largely identical to Prophet's Complaint.  Dkts. 30, 31 ("Motion"), 32.  Defendants responded in support of that motion on March 24, 2023.  Dkt. 33.  Prophet opposed the motion that same day.  Dkts. 34 ("Opposition"), 35.  The Proposed Intervenor filed a reply on March 31, 2023.  Dkt. 37.

## II.  Legal Standard

Intervention is "a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand."  *Floyd*, 770 F.3d at 1057 (internal quotation marks omitted).  Federal Rule of Civil Procedure 24 "strikes this balance by providing potential intervenors with two ways to intervene: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b)."  *Cont'l Indem. Co. v. Bulson Mgmt., LLC*, No. 20 Civ. 3479 (JMF), 2020 WL 6586156, at *2 (S.D.N.Y. Nov. 10, 2020).

Rule 24(a)(2) provides that a court must grant intervention to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Thus, to intervene as of right pursuant to Rule 24(a)(2), "a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'"  *In*

*re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "A non-party moving to intervene in an action bears the burden of demonstrating that it meets the requirements for intervention." *Greater Chautauqua Fed. Credit Union v. Marks*, No. 22 Civ. 2753 (MVK), 2023 WL 2744499, at *6 (S.D.N.Y. Mar. 31, 2023) (internal quotation marks omitted). "Failure to meet any one of these requirements suffices for a denial of the motion." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000).

Rule 24(b) "provides that, on timely motion, intervention may be permitted to anyone who 'has a claim or defense that shares with the main action a common question of law or fact.'" *Eddystone Rail Co. v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 595 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 24(b)(1)(B)). "In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Thus, the Court "analyze[s] three criteria in adjudicating a motion for permissive intervention: (1) the timeliness of the motion; (2) a common question of law or fact; and (3) undue delay or prejudice." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 172 (S.D.N.Y. 2016); *cf. United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (noting that undue delay or prejudice is "[t]he principal guide in deciding whether to grant permissive intervention").

### III.  Discussion

No party challenges the timeliness of the Proposed Intervenor's motion. *See* Motion at 8-10 (arguing that the motion is timely); Opposition at 4 (offering no argument that Proposed Intervenor failed to file a timely motion to intervene). The Court therefore turns to the second Rule 24(a)(2) factor: whether the Proposed Intervenor has shown an interest in this action. "'The

6

term "interest" in this context defies simple definition,' yet the Second Circuit has observed that the interest must be 'direct, as opposed to remote or contingent' and 'significantly protectable.'" *Cont'l Indem. Co.*, 2020 WL 6586156, at *2 (quoting, with a slight modification, *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)).

The Proposed Intervenor initially argued that he holds, on behalf of the Debtor's bankruptcy estate, a $22,000,000 interest in the Nominal Defendant, the RBSHD 2013-1 Trust, as a junior priority noteholder. Motion at 11. However, the Proposed Intervenor's own subsequent briefing shows that not to be the case. In his reply brief, the Proposed Intervenor states that the Debtor's ownership interest in "DCM and/or DCM-P1," through which the Debtor held its noteholder interest in the RBSHD 2013-1 Trust, Dkt. 30-1 ¶ 4, was transferred in fall 2018 by the Debtor's former principal, Browndorf. Reply at 2. The Proposed Intervenor argues that this transfer was done "covertly and fraudulently," *id.*, and predicts that he will "finalize his undisputed standing as the owner of the concealed fraudulent transfer of the bankruptcy estate's interest in the $22,000,000 B Noteholder/B Bonds interests in the RBSHD 2013-1 Trust," by means of a litigation that he "expects . . . to be quickly resolved by way of a default and default judgment in favor of Proposed Intervenor." *Id.* at 7-8.

Thus, as the Proposed Intervenor acknowledges in his briefing, his claimed interest was transferred away from the Debtor, and it is only by means of a separate litigation that he will claw back that interest. But "courts have denied motions to intervene where the movant's interests are contingent upon the outcome of pending or future litigation," because "[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy" Rule 24(a)(2)'s interest requirement. *Cont'l Indem. Co.*, 2020 WL 6586156, at *2 (internal quotation marks omitted). Nor has the Proposed

Intervenor described the circumstances of that transfer or provided any other information that would allow this Court to assess the likelihood of his success in that other litigation even if such a contingent interest could satisfy Rule 24(a)(2).  Because the Proposed Intervenor's interest is contingent on the resolution of a separate proceeding, he fails to demonstrate that he may intervene in this action as a matter of right.[2]

Turning then to permissive intervention, allowing the proposed intervention would cause undue delay in this case, as it would likely require the adjudication of matters not otherwise at issue in this litigation, including the status of the Proposed Intervenor's potential interest in the RBSHD 2013-1 Trust via DCM and DCM-P1.  For example, it is not clear to the Court that the Proposed Intervenor would have the ability to bring each of his proposed claims against Defendants given that the alleged conduct occurred almost entirely after the 2018 transfer of the Debtor's interests in DCM and DCM-P1, though the Court of course reaches no holding on that point.  Regardless of whether DCM and DCM-P1 themselves would be properly interested parties in that transaction if they sought to intervene, or whether Defendants will bring claims against those entities in the event their motion to dismiss is unsuccessful, as they expect, Dkt. 33 at 5, it also is not clear from the Proposed Intervenor's briefing that he properly represents those parties.  Resolving those issues would unnecessarily complicate and delay this litigation.  Therefore, because the proposed intervention would likely cause undue delay in this case, the Court denies

---

[2] For similar reasons, the Proposed Intervenor's argument that "Christiana Trust's pleading make[s] it clear that they intend to assert claims against the Debtor's *previously* wholly owned entities," Reply at 8 (emphasis added), thereby requiring the Proposed Intervenor's participation in this case, is undermined by the fact that it is not clear that the Debtor would be implicated by such claims.  The same is true of Defendants' statement that, if their proposed motion to dismiss is denied, they will seek to join DCM and DCM-P1 in this action. Dkt. 33 at 5.

the motion to intervene in its entirety.[3] *See Pitney Bowes*, 25 F.3d at 73 (stating that undue delay or prejudice is "[t]he principal guide in deciding whether to grant permissive intervention").

## IV. Conclusion

For the above stated reasons, the motion to intervene is denied in its entirety. Defendants shall file their proposed motion to dismiss by July 5, 2023. Prophet shall file its response by August 21, 2023. Defendants shall file their reply, if any, by September 20, 2023. The Clerk of Court is respectfully directed to close the motion pending at Docket Number 30.

SO ORDERED.

Dated: May 18, 2023
      New York, New York

                                              JOHN P. CRONAN
                                          United States District Judge

---

[3] The Court notes as well that the Proposed Intervenor appears to have abandoned his arguments in favor of a permissive intervention, as he did not address Prophet's arguments against such an intervention in his reply brief.