# ALSTON & BIRD

90 Park Avenue
New York, NY 10016
212-210-9400 | Fax: 212-210-9444

Alexander S. Lorenzo          Direct Dial: +1 212 210 9528          Email: alexander.lorenzo@alston.com

*Via ECF*

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

> **Plaintiff's request is granted. The parties shall file a revised proposed Case Management Plan by November 20, 2023. The Clerk of Court is respectfully directed to close Docket Number 59.**
>
> **SO ORDERED.**
> **Date: November 13, 2023**
> **New York, New York**
>
> _____
> JOHN P. CRONAN
> United States District Judge

Re: *Prophet Mortgage Opportunities, LP v. Christiana Trust and RBSHD 2013-1 Trust*, No. 1:22-cv-09771-JPC

Dear Judge Cronan,

    We are counsel to Defendants in the above-referenced matter and write in response to the letter from Plaintiff Prophet Mortgage Opportunities, LP ("Plaintiff") dated October 20, 2023 (the "**Letter**") requesting the entry of a Case Management Plan and start of discovery prior to the filing of an Answer and third-party complaint by Defendants. For the reasons set forth below, Defendants request that the Court maintain the status quo until the resolution of the pending motion to dismiss.

    *First*, there is no prejudice or urgent need to change the status quo and commence discovery in this case prior to the filing of the Answer and third-party complaint by Defendants; if there was, Plaintiff would have raised this issue months ago. As the Court is aware, Plaintiff filed its Complaint in late 2022 and never sought to enter a Case Management Plan or start the discovery period until mid-October 2023, shortly before the due date for Defendants to file the reply brief in support of their motion to dismiss. Plaintiffs offer no compelling reason why having proceeded without discovery until now, discovery should now commence in advance of a decision on Defendants' motion and the addition of more parties.

    *Second*, Defendants' motion to dismiss is now fully briefed. Therefore, the time for the Defendants to file their Answer and third-party complaint will arrive in due course. Moreover, as set forth therein, Plaintiff made the strategic decision to assert more than 30 overlapping derivative and direct claims. Plaintiff's decision gave rise to Defendants' motion to dismiss on the grounds that Plaintiff lacks standing to pursue the derivative claims and certain direct claims fail as a matter of law. The resolution of the motion to dismiss will determine whether the Owner Trustee remains a defendant and which of the numerous claims remain in the case. It will be most efficient for the parties to know which defendants

October 25, 2023
Page 2

and which claims remain before the parties discuss the schedule for the Case Management Plan and start discovery.

*Third*, when Defendants file their Answer after the decision on the motion to dismiss, Defendants intend to join as parties the entities at the heart of the alleged wrongdoing in this case: DCM-P1, LLC ("**DCM-P1**") and Distressed Capital Management, LLC ("**DCM**"). According to Plaintiff, DCM-P1 is "the Majority Certificateholder under the Trust Agreement" and has "the right to direct the Trust to undertake certain actions" and to "direct the Owner Trustee in the management of the Trust." Compl. ¶¶ 18-20. Plaintiff further alleges that DCM-P1 was "controlled" and "owned" by Matthew Browndorf. *Id.* ¶ 20. Plaintiff alleges that DCM-P1 directed Defendant Christiana Trust, as Owner Trustee, to install DCM "as sole Servicer for the Trust," despite DCM not "satisfy[ing] the requirements for a Successor" under the Servicing Agreement. *See id.* ¶¶ 39, 42. Plaintiff further alleges that DCM-P1 directed Defendant Christiana Trust, as Owner Trustee, to improperly sell loans to LNREPO 2021 LLC, "which is an affiliate of both DCM-P1, the Majority Certificateholder, and DCM, the Servicer." *Id.* ¶¶ 60, 62.[1] Defendants intend to pursue claims against DCM-P1 and DCM asserting that these entities are responsible for any harm allegedly suffered by Plaintiff or the Trust.

Plaintiffs made the strategic decision ***not*** to name DCM-P1 and DCM as parties despite allegations of their alleged wrongdoing in the Complaint. While Defendants do not know the reason why Plaintiff made this strategic decision, Plaintiff was a business partner with Matthew Browndorf and DCM-P1 with respect to the Trust through an LLC called Evelyn 2018 LLC. *See* Dkt. 23 at 2-3. Regardless, given the allegations in the Complaint and Defendants' planned third-party complaint, the conduct of DCM and DCM-P1, along with their relationship with Plaintiff and Plaintiff's knowledge of their conduct, are central to this action.

For this reason, Defendants respectfully submit that the Court should not enter a Case Management Plan until after DCM-P1 and DCM have been added as parties so they can participate in the discussions regarding the discovery and expert schedule. While Plaintiff suggests there is "uncertainty over who currently has legal or practical control of DCM and DCM-P1," this issue could have been alleviated months ago if Plaintiff had named them as parties. In any event, Richard Marshack, the Chapter 7 bankruptcy trustee for LF Runoff 2, LLC, recently took certain actions in an effort to assert control of DCM-P1 and DCM. Specifically, he obtained a default judgment in his action seeking to avoid the fraudulent conveyance of the equity interests in DCM-P1 and DCM from LF Runoff 2, LLC to Plutos Sama Holdings, Inc. *See Richard A. Marshack, in his capacity as Chapter 7 Trustee v. Plutos Sama Holdings, Inc.*, Case No. 8:23-ap-1031, (Bankr. C.D. Cal. 2023),

---

[1] Plaintiff alleges other wrongdoing by both DCM-P1 and DCM. *See, e.g., id.* ¶¶ 42 ("[T]he fact that DCM does not satisfy the requirements for a successor Servicer under the Servicing Agreement was compounded by the fact that the party directing the appointment of DCM as successor Servicer, DCM-P1, is a DCM affiliate."); ¶ 47 (describing the "untruthfulness of DCM-P1's assertions concerning DCM's eligibility"); ¶ 56 ("DCM failed to comply with Sections 3.01(a) and Section 7.04" of the Servicing Agreement); ¶ 132 (alleging that "DCM was not qualified to be a successor Servicer," and "DCM-P1 lied about DCM's qualifications"); *see also generally, id.* ¶¶ 39-60.

October 25, 2023
Page 3

Dkt. Nos. 1, 30.  Therefore, Mr. Marshack, as Chapter 7 bankruptcy trustee, is likely to assert the authority to act on behalf of DCM-P1 and DCM at the time they are added as parties.  Based on the prior Motion to Intervene in this case (Dkt. No. 22), Defendants also expect that DCM-P1 and/or DCM will assert counterclaims against Defendants.

It is most efficient to begin discussions of a Case Management Plan once the motion to dismiss is decided and all parties are in the case.  As explained below, this avoids the potential for duplicative discovery and later requests to extend the schedule.  Once added, counsel for all parties can attempt to negotiate a reasonable Case Management Plan and discovery schedule.  If all parties cannot agree on the Plan and schedule, the parties can then submit competing proposals to the Court.

*Fourth*, Plaintiff's proposal is not reasonable or practical under the circumstances of the case.  Plaintiff proposes that fact discovery begins in less than two weeks and ends on March 5, 2024, and expert discovery begins as soon as February 27, 2024, and ends on May 7, 2024.  If entered, such a Case Management Plan will inevitably need to be amended and extended after Defendants file their Answer and DCM-P1 and DCM are added as parties.[2]  Once added, counsel for DCM-P1 and DCM will need to participate in discovery and need sufficient time to prepare its defense and any affirmative claims.  Counsel for DCM-P1 and DCM will want document and deposition discovery from Defendants and Plaintiffs.  (As Plaintiff acknowledges, "[b]oth Prophet and Christiana Trust are likely to seek discovery from DCM and DCM-P1 . . . .") (Letter, p. 3).  Therefore, to avoid multiple depositions of the same witness or party, no depositions could occur until after DCM-P1 and DCM are added as parties.  As a result, Plaintiff's proposal guarantees that the parties (including DCM-P1 and DCM) will come back to the Court requesting an extension of the fact and expert discovery deadlines.  Such serial discovery extensions are inefficient and unnecessary.

Accordingly, Defendants respectfully request (i) that the Court deny Plaintiff's request to enter a Case Management Plan at this time, and (ii) that the Court maintain the status quo until Defendants have filed their Answer and third-party complaint following the resolution of the pending motion to dismiss.

We are available at Your Honor's convenience if the Court requires any additional information.

Respectfully submitted,

*/s/ Alexander S. Lorenzo*

cc: All counsel of record (by ECF)

---

[2] These dates also fail to provide sufficient time for discovery in light of the substantial amount of anticipated third-party discovery in this case.